# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### SOUTHTHERN DIVISION

| | | |
|---|---|---|
| SHARI BUERCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Case No. 1:14CV32NCC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,) | | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Shari Buerck (Plaintiff) for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. §§ 401 et seq. Plaintiff has filed a brief in support of the Complaint. (Doc. 15). Defendant has filed a brief in support of the Answer. (Doc. 18). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c). (Doc. 14).

## I.
## PROCEDURAL HISTORY

On April 7, 2011, Plaintiff filed her application for DIB, alleging a disability onset date of October 26, 2010. (Tr. 144-52). Plaintiff's application was denied,

and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 88-91). After a hearing, by decision, dated February 6, 2013, the ALJ found Plaintiff not disabled. (Tr. 9-22). On January 24, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.
## LEGAL STANDARDS

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "'If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled.'" Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." Id. "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page

v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001) (citing Nguyen v. Chater, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d); pt. 404, subpt. P, app. 1. If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. See id.

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her Residual Functional Capacity (RFC). See Steed v. Astrue, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."); Eichelberger, 390 F.3d at 590-91; Masterson v. Barnhart, 363 F.3d 731, 737 (8th Cir. 2004); Young v. Apfel, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other

jobs in the national economy that can be performed by a person with the claimant's RFC. See Steed, 524 F.3d at 874 n.3; Young, 221 F.3d at 1069 n.5. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Id. See also Harris v. Barnhart, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); Stormo v. Barnhart, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."); Charles v. Barnhart, 375 F.3d 777, 782 n.5 (8th Cir. 2004) ("[T]he burden of production shifts to the Commissioner at step five to submit evidence of other work in the national economy that [the claimant] could perform, given her RFC."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. See Clark v. Heckler, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002). See also Cox v. Astrue, 495 F.3d 614, 617 (8th Cir. 2007). In Bland v. Bowen, 861 F.2d 533, 535 (8th Cir. 1988), the Eighth Circuit Court of Appeals held:

> The concept of substantial evidence is something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the Secretary may decide to grant or deny benefits without being subject to reversal on appeal.

See also Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006) ("[W]e may not reverse merely because substantial evidence exists for the opposite decision.") (quoting Johnson v. Chater, 87 F.3d 1015, 1017 (8th Cir. 1996)); Hartfield v. Barnhart, 384 F.3d 986, 988 (8th Cir. 2004) ("[R]eview of the Commissioner's final decision is deferential.").

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. See Cox, 495 F.3d at 617; Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); McClees v. Shalala, 2 F.3d 301, 302 (8th Cir. 1993); Murphy v. Sullivan, 953 F.2d 383, 384 (8th Cir. 1992). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. See Davis v. Apfel, 239 F.3d 962, 966 (8th Cir. 2001) (citing McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. See Benskin v. Bowen, 830 F.2d 878, 882 (8th Cir. 1987). See also Onstead v. Sullivan, 962 F.2d 803, 804 (8th Cir. 1992) (holding that an ALJ's decision is conclusive upon a reviewing court if it is supported by "substantial evidence"). Thus, an administrative decision which is supported by

substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.    See <u>Krogmeier</u>, 294 F.3d at 1022.    <u>See also</u> <u>Eichelberger</u>,  390 F.3d at 589; <u>Nevland v. Apfel</u>, 204 F.3d 853, 857 (8th Cir. 2000) (quoting <u>Terrell v. Apfel</u>, 147 F.3d 659, 661 (8th Cir. 1998)); <u>Hutsell v. Massanari</u>, 259 F.3d 707, 711 (8th Cir. 2001).

To determine whether the Commissioner's final decision is supported by substantial evidence, the court is required to review the administrative record as a whole and to consider:

(1) Findings of credibility made by the ALJ;

(2) The education, background, work history, and age of the claimant;

(3) The medical evidence given by the claimant's treating physicians;

(4) The subjective complaints of pain and description of the claimant's physical activity and impairment;

(5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon proper hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

<u>Brand v. Sec'y of Dep't of Health, Educ. & Welfare</u>, 623 F.2d 523, 527 (8th Cir. 1980); <u>Cruse v. Bowen</u>, 867 F.2d 1183, 1184-85 (8th Cir. 1989).

Additionally, an ALJ's decision must comply "with the relevant legal requirements." Ford v. Astrue, 518 F.3d 979, 981 (8th Cir. 2008).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A). "While the claimant has the burden of proving that the disability results from a medically determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When evaluating evidence of pain, the ALJ must consider:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

Baker v. Sec'y of Health & Human Servs., 955 F.2d. 552, 555 (8th Cir. 1992); Polaski, 739 F.2d at 1322.

The absence of objective medical evidence is just one factor to be considered in evaluating the plaintiff's credibility. See id. The ALJ must also consider the plaintiff's prior work record, observations by third parties and treating and examining doctors, as well as the plaintiff's appearance and demeanor at the hearing. See Polaski, 739 F.2d at 1322; Cruse, 867 F.2d at 1186.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the plaintiff's complaints. See Guilliams, 393 F.3d at 801; Masterson, 363 F.3d at 738; Lewis v. Barnhart, 353 F.3d 642, 647 (8th Cir. 2003); Hall v. Chater, 62 F.3d 220, 223 (8th Cir. 1995). It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence. Robinson v. Sullivan, 956 F.2d 836, 841 (8th Cir. 1992); Butler v. Sec'y of Health & Human Servs., 850 F.2d 425, 429 (8th Cir. 1988). The ALJ, however, "need not explicitly discuss each Polaski factor." Strongson v. Barnhart, 361 F.3d 1066, 1072 (8th Cir. 2004). See also Steed, 524 F.3d at 876 (citing Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000)). The ALJ need only acknowledge and consider those factors. See id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. See Rautio v. Bowen, 862 F.2d 176, 179 (8th Cir. 1988); Millbrook v. Heckler, 780 F.2d 1371, 1374 (8th Cir. 1985).

RFC is defined as what the claimant can do despite his or her limitations, 20 C.F.R. § 404.1545(a)(1), and includes an assessment of physical abilities and mental impairments. 20 C.F.R. § 404.1545(b)-(e). The Commissioner must show that a claimant who cannot perform his or her past relevant work can perform other work which exists in the national economy. See Karlix v. Barnhart, 457 F.3d 742, 746 (8th Cir. 2006); Nevland, 204 F.3d at 857 (citing McCoy v. Schweiker, 683 F.2d 1138, 1146-47 (8th Cir. 1982) (en banc)). The Commissioner must first prove that the claimant retains the RFC to perform other kinds of work. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857. The Commissioner has to prove this by substantial evidence. Warner v. Heckler, 722 F.2d 428, 431 (8th Cir. 1983). Second, once the plaintiff's capabilities are established, the Commissioner has the burden of demonstrating that there are jobs available in the national economy that can realistically be performed by someone with the plaintiff's qualifications and capabilities. See Goff, 421 F.3d at 790; Nevland, 204 F.3d at 857.

To satisfy the Commissioner's burden, the testimony of a vocational expert (VE) may be used. An ALJ posing a hypothetical to a VE is not required to include all of a plaintiff's limitations, but only those which he finds credible. See Goff, 421 F.3d at 794 ("[T]he ALJ properly included only those limitations supported by the record as a whole in the hypothetical."); Rautio, 862 F.2d at 180. Use of the Medical-Vocational Guidelines is appropriate if the ALJ discredits the

plaintiff's subjective complaints of pain for legally sufficient reasons. See Baker v. Barnhart, 457 F.3d 882, 894-95 (8th Cir. 2006); Carlock v. Sullivan, 902 F.2d 1341, 1343 (8th Cir. 1990); Hutsell v. Sullivan, 892 F.2d 747, 750 (8th Cir. 1989).

### III.
### DISCUSSION

The issue before the court is whether substantial evidence supports the Commissioner's final determination that Plaintiff was not disabled. See Onstead, 962 F.2d at 804. Thus, even if there is substantial evidence that would support a decision opposite to that of the Commissioner, the court must affirm her decision as long as there is substantial evidence in favor of the Commissioner's position. See Cox, 495 F.3d at 617; Krogmeier, 294 F.3d at 1022.

Plaintiff, who was turning forty-nine two days after the hearing, testified that she was five feet seven inches tall and weighed 200 pounds; that she had a cosmetology license; that she last worked on April 7, 2011, at which time she was laid off; that she initially filed for unemployment compensation but withdrew the application because she was filing for disability; that, after she was laid off, she did not try to find work because of back and leg pain; and that the most serious conditions she had which affected her ability to work were panic attacks and back pain. Plaintiff also testified that she had difficulty sitting, standing, or walking for very long due to constant pain; that she could not lift a gallon of milk without pain; that she frequently fell down; that she rarely performed household chores; and that

she spent most of her days lying on the couch trying to alleviate her pain. (Tr. 33-45, 50-51).

The ALJ found that Plaintiff met the insured status requirements through March 30, 2016; that she had not engaged in substantial gainful activity since her alleged onset date, October 26, 2010; that Plaintiff had the severe impairments of obesity, hypertension, degenerative disc disease of the lumbar spine status post fusion of L3-4, depression, and anxiety; and that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. The ALJ found that Plaintiff had the RFC to perform light work[1] except for the following limitations: Plaintiff could not climb ladders, ropes, or scaffolds; she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; she should avoid moderate exposure to extreme cold; she should avoid all exposure to excessive vibrations, to unprotected heights, and to the use of hazardous machinery, excluding motor vehicles; and she was limited to performing simple unskilled work with only occasional interaction with co-workers and the general public. The ALJ further found that Plaintiff was

---

[1] The Regulations define light work as 'involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects up to 10 pounds." 20 C.F.R. § 404.1567(b). Additionally, "[s]ince frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Regulation (SSR) 83-10, 1983 WL 31251, at *6 (Dec. 12, 1983).

unable to perform her past relevant work and, considering Plaintiff's age, work experience, and RFC, that there were jobs, which existed in significant numbers in the national economy, that Plaintiff could perform. As such, the ALJ found that Plaintiff was not disabled.

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ gave improper weight to the opinion of Stanley Hutson, Ph.D., the State agency review doctor, who found Plaintiff's impairments were not severe; because the ALJ indicated he gave significant weight to the opinion of Plaintiff's surgeon, Paul Santiago, M.D., although the ALJ actually did not afford any weight to Dr. Santiago's opinion; because the ALJ gave insufficient weight to the opinion of Dr. Jay Liss, Plaintiff's treating psychiatrist; and because the ALJ gave little weight to the opinion of Kathy Arnzen, F.N.P, who opined that Plaintiff was unable to engage in substantial gainful activity. (Doc. 15). For the following reasons, the court finds that Plaintiff's arguments are without merit and that the ALJ's decision is supported by substantial evidence.


A.    **Plaintiff's Credibility:**

The court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Plaintiff's credibility was essential to the ALJ's determination of other issues. See Wildman v. Astrue, 596 F.3d 959, 969 (8th Cir. 2010) ("[The

plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible.") (citing Tellez v. Barnhart, 403 F.3d 953, 957 (8th Cir. 2005)); 20 C.F.R. §§ 404.1545, 416.945 (2010). As set forth more fully above, the ALJ's credibility findings should be affirmed if they are supported by substantial evidence on the record as a whole; a court cannot substitute its judgment for that of the ALJ. See Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Hutsell, 892 F.2d at 750; Benskin, 830 F.2d at 882.

To the extent that the ALJ did not specifically cite Polaski, other case law, and/or Regulations relevant to a consideration of Plaintiff's credibility, this is not necessarily a basis to set aside an ALJ's decision where the decision is supported by substantial evidence. Randolph v. Barnhart, 386 F.3d 835, 842 (8th Cir. 2004); Wheeler v. Apfel, 224 F.3d 891, 895 n.3 (8th Cir. 2000); Reynolds v. Chater, 82 F.3d 254, 258 (8th Cir. 1996); Montgomery v. Chater, 69 F.3d 273, 275 (8th Cir. 1995). Additionally, an ALJ need not methodically discuss each Polaski factor if the factors are acknowledged and examined prior to making a credibility determination; where adequately explained and supported, credibility findings are for the ALJ to make. See Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). See also Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each Polaski factor as long as the analytical framework is

recognized and considered."); <u>Strongson</u>, 361 F.3d at 1072; <u>Brown v. Chater</u>, 87 F.3d 963, 966 (8th Cir. 1996).

In any case, "[t]he credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." <u>Pearsall v. Massanari</u>, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." <u>Gregg v. Barnhart</u>, 354 F.3d 710, 714 (8th Cir. 2003). <u>See also</u> <u>Halverson v. Astrue</u>, 600 F.3d 922, 932 (8th Cir. 2010); <u>Cox v. Barnhart</u>, 471 F.3d 902, 907 (8th Cir. 2006). For the following reasons, the court finds that the reasons offered by the ALJ in support of his credibility determination are based on substantial evidence.

First, the ALJ considered Plaintiff's daily activities, and stated that, "despite the alleged severity of her impairments," Plaintiff had engaged "in a somewhat normal level" of daily activity and interaction. Specifically, the ALJ considered that Plaintiff stated, in a Function Report, that she was able to iron her clothing, do her hair and make-up, drive, help care for the family pets, cook, do laundry, complete household cleaning, including dusting, scrubbing, and vacuuming, go out alone, go shopping, manage her own finances, go to the movies, and socialize with family.

The court also notes that Plaintiff stated, in her Function Report that, when her husband was "off the road," she "fixe[d] a full meal"; that she shopped for groceries and medications; that she shopped once a week for about one to one and a half hours; that she read on a daily basis; that she tried to play with her grandson, on the floor; and that she fed her family's two inside dogs and cat. Plaintiff also said her family told her that she needed to "get out more." The ALJ concluded that Plaintiff's ability to participate in "such activities undermined the credibility of [her] allegations of disabling functional limitations." (Tr. 16, 199-206).

While the undersigned appreciates that a claimant need not be bedridden before she can be determined to be disabled, Plaintiff's daily activities can nonetheless be seen as inconsistent with her subjective complaints of a disabling impairment and may be considered in judging the credibility of complaints. See Eichelberger, 390 F.3d at 590 (ALJ properly considered that plaintiff watched television, read, drove, and attended church upon concluding that subjective complaints of pain were not credible); Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001); Onstead, 962 F.2d at 805; Murphy v. Sullivan, 953 F.2d 383, 386 (8th Cir. 1992); Benskin, 830 F.2d at 883; Bolton v. Bowen, 814 F.2d 536, 538 (8th Cir. 1987). Indeed, the Eighth Circuit holds that allegations of disabling "pain may be discredited by evidence of daily activities inconsistent with such allegations." Davis v. Apfel, 239 F.3d 962, 967 (8th Cir. 2001). "Inconsistencies between [a

claimant's] subjective complaints and her activities diminish her credibility." Goff, 421 F.3d at 792. See also Haley v. Massanari, 258 F.3d 742, 748 (8th Cir. 2001); Nguyen v. Chater, 75 F.3d 429, 439-41 (8th Cir. 1996) (holding that a claimant's daily activities, including visiting neighbors, cooking, doing laundry, and attending church, were incompatible with disabling pain and affirming denial of benefits at the second step of analysis).

Second, the ALJ considered that Plaintiff admitted that, after her alleged onset date, she worked as a medical assistant for nine and a half to ten hours a day. (Tr. 16). The court notes that, in her Function Report, which Plaintiff completed on April 13, 2011, Plaintiff stated that she was a medical assistant; that she would arrive at work at 7:45 a.m., which was a twenty minute drive from her home; and that, after arriving at work, she worked as a medical assistant for the next nine and a half to ten hours. (Tr. 199). Also, Plaintiff testified that she worked part-time as a medical assistant because her employer did not have any more hours to give her. (Tr. 51). Work performed during any period in which a plaintiff alleges that she was under a disability may demonstrate an ability to perform substantial gainful activity. See 20 C.F.R. §§ 404.1571, 416.971 (2010) ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). The ALJ may consider a plaintiff's work activity during a period of time in which she alleges disability as a significant factor in

finding a plaintiff not credible.  See Tindell v. Barnhart, 444 F.3d 1002, 1006 (8th Cir. 2006) (among other factors, claimant worked 10 hours per week in a catering business); Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004) ("It was also not unreasonable for the ALJ to note that Harris's . . . part-time work [was] inconsistent with her claim of disabling pain.").

Third, the ALJ considered that Plaintiff testified that she stopped working due to a business-related layoff, rather than because of her allegedly disabling impairments.  (Tr. 16, 36, 312).  Leaving work for reasons unrelated to an alleged disabling impairment weighs against a finding of disability.  Medihaug v. Astrue, 578 F.3d 805, 816-17 (8th Cir. 2009); Browning v. Sullivan, 958 F.2d 817, 821 (8th Cir. 1992).  The ALJ further considered that there was no evidence of a significant deterioration in Plaintiff's medical condition since her lay off, and stated that that there was a reasonable inference that Plaintiff's "impairment would not prevent the performance of [her last] job, since it was being performed adequately at the time of the layoff despite a similar medical condition."  (Tr. 16). See Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("Thus, despite suffering from what she calls 'extreme fatigue,' Van Vickle continued working for over four years.").

Fourth, the ALJ considered that Plaintiff's treating physician's noted that Plaintiff was inconsistent in reporting the success of her back surgery and was

suspected of incorrectly reporting blood pressure results and consistency with her treatment plan. (Tr. 16). In this regard, the record reflects that, in October 2010, Dr. Santiago performed back surgery on Plaintiff. At a follow-up appointment, on December 7, 2010, Plaintiff "reported that she [was] doing quite well"; that she continued to have "some pain, mostly incisional"; and that her "preoperative pain ha[d] improved dramatically." (Tr. 261). On February 22, 2011, Plaintiff again reported to Dr. Santiago that she was "doing quite well"; that she had a recent flare-up after a fall down a few steps; that she was "better than before surgery"; that she was "quite happy with her outcome"; and that she was no longer taking pain medication. (Tr. 260).

However, on June 30, 2011, Sarah A. Aydt, M.D., Plaintiff's primary care physician, reported that, although Dr. Santiago had reported that Plaintiff was "happy with the outcome of her back surgery," Plaintiff had recently told Dr. Aydt that "her pain was no better than it was before surgery." Dr. Aydt noted that she and Dr. Santiago were "getting discordant views with [their] interviews." (Tr. 365). On August 17, 2012, when Plaintiff presented for a routine re-evaluation, Dr. Aydt reported that Plaintiff's blood pressure at home was "quite variable"; Plaintiff's diastolics were "supposedly above 100 many times"; but Dr. Aydt was "not sure [she] [could] buy this." (Tr. 405). See Travis v. Astrue, 477 F.3d 1037, 1042 (8th Cir. 2007) ("An ALJ may not disregard subjective complaints merely

because there is no evidence to support the complaints, but may disbelieve subjective reports because of inherent inconsistencies or other circumstances.") (internal quotation and citation omitted).

Fifth, in regard to Plaintiff's physical impairments, the ALJ considered that, after Plaintiff's disc surgery, on October 27, 2010, she was limited to "conservative means of occupational therapy, home exercise, pain medication, activity modification, and follow-up care." (Tr. 17). As for Plaintiff's mental impairments, the ALJ noted that Plaintiff had only conservative treatment, consisting of medication review and some counseling. (Tr. 18, 312-23, 324-29, 351-89, 410-15). Further, the record does not reflect that Plaintiff was hospitalized for psychiatric treatment. Moreover, on December 11, 2012, it was reported that Plaintiff had not been in counseling for about four years. (Tr. 410). See Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000) (a lack of regular treatment for an alleged disabling condition detracts from a claimant's credibility); Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (lack of objective medical evidence contradicts a claimants allegations of disabling pain).

Sixth, the ALJ considered Plaintiff's medical records relevant to both her physical and mental impairments, and found that Plaintiff's credibility regarding the severity of her impairments was "diminished because those allegations [were] greater than [could be] expected in light of the objective evidence of record." (Tr.

16-20).  While an ALJ may not disregard subjective pain allegations solely because they are not fully supported by objective medical evidence, an ALJ is entitled to make factual determination that a claimant's subjective pain complaints are not credible in light of objective medical evidence.  See Ramirez v. Barnhart, 292 F.3d 576 (8th Cir. 2002) (citing 20 C.F.R. §§ 416.908, 416.929).

The objective medical evidence in Plaintiff's case reflects that, before Plaintiff had disc surgery, in October 2010, Dr. Santiago reported that Plaintiff had 5/5 strength throughout with normal muscular bulk and tone; her sensation was intact to light touch; her deep tendon reflexes were "2+ throughout"; Plaintiff's gait was narrow based and stable; she was able to heel and toe walk without difficulty; she had normal range of motion (ROM) on flexion, extension, and rotation of her neck; and her straight leg raise was negative.  It was noted on this date that Plaintiff "asked to be scheduled for surgery."  (Tr. 265).  After Plaintiff's October 27, 2010 disc surgery, Dr. Santiago reported, on December 7, 2010, that Plaintiff's wound was "well healed without evidence of infection"; that her strength was 5/5 in her lower extremities; that her gait was narrow based and stable; that imaging studies revealed evidence of stable implants and alignment, although there had been "some subsidence of [Plaintiff's] interbody device"; and that Dr. Santiago was happy with Plaintiff's progress.  (Tr. 261).

Further, on February 22, 2011, Dr. Santiago reported that, on examination, Plaintiff's gait was narrow based and stable, her strength was 5/5 in her lower extremities, x-rays showed "stable implants and alignment," and there was an "evolving intertransverse fusion mass." (Tr. 260). A May 24, 2011 radiography exam showed interbody fusion, with "no motion of the fused segments in either flexion or extension." (Tr. 425). Additionally, in August 2011, Plaintiff's extremities were without clubbing, cyanosis, or edema; her joints were unremarkable; and her "bimanual exam [was] unremarkable." (Tr. 363).

Moreover, on February 23, 2012, Plaintiff had "good" ROM of the hands, wrists, elbows, shoulders, spine, hips, knees, and ankles, no hand, back, or leg pain, and no tenderness, clubbing, cyanosis or significant edema. (Tr. 430). On March 1, 2012, Plaintiff had no edema in her extremities, hands or feet, and her joints were "grossly unremarkable." (Tr. 356). On June 22, 2012, Plaintiff had no "musculo-skeletal" deformities or enlarged joints, and no clubbing, cyanosis, or significant edema. (Tr. 432). Medical records, dated January 1, 2013, reflect that Plaintiff said she had pain on a daily basis and that it radiated into her legs. Records of this date further state that, on examination, Plaintiff did not appear to be in acute distress; Plaintiff had tightness in the paraspinal muscles in the lumbar spine; she had decreased ROM; and her straight leg raise was positive at thirty degrees. (Tr. 427-28).

In regard to Plaintiff's mental impairments, the ALJ considered that the majority of Plaintiff's mental status examinations did not support her claim of disabling impairments. (Tr. 18). Indeed, on February 15, 2011, Dr. Liss reported that Plaintiff was "doing well; that her mood was good; that she was having "more panic attack[s]," which were waking her up at night; and that, sometimes, she had to take extra Xanax. (Tr. 325). On June 9, 2011, Dr. Liss reported that Plaintiff was doing well, her panic attacks were better, her mood was stable, and her medications were working well. (Tr. 414). On February 23, June 22, and October 29, 2012, and January 10, 2013, Plaintiff was oriented and had appropriate mood and affect. (Tr. 428, 430, 432, 434).

Seventh, Dr. Santiago reported, in October 2011, that he was allowing Plaintiff to return to work full time, with no restrictions other than his advising Plaintiff to avoid excessive heavy lifting as well as repetitive bending and twisting. (Tr. 260). See Eichelberger, 390 F.3d at 590 (ALJ could find claimant not credible based in part on fact that no physician imposed any work related restrictions); Young v. Apfel, 221 F.3d 1065, 1069 (8th Cir. 2000) ("We find it significant that no physician who examined Young submitted a medical conclusion that she is disabled and unable to perform any type of work.").

Eighth, the ALJ considered that medication helped Plaintiff's conditions. (Tr. 18). See Schultz v. Astrue, 578 F.3d 838, 946 (8th Cir. 2007) (conditions

which can be controlled with medication are not disabling). In regard to Plaintiff's mental impairments, on August 16, 2010, Dr. Aydt reported that Plaintiff's psychiatrist was prescribing Xanax and Adderall, and that Plaintiff was "doing well with such"; and that Plaintiff's marital discord was better and her relationship with her mother and sisters had improved. (Tr. 315). Dr. Liss, Plaintiff's psychiatrist, reported on October 23, 2010, that Plaintiff's medications were "working well" and that she "need[ed] no changes." (Tr. 326). As stated above, Plaintiff reported, in February 2011, that she took extra Xanax when she had increased panic attacks. (Tr. 325). On April 12, 2011, when Plaintiff said she did not think Cymbalta was working, Dr. Liss changed her medication. (Tr. 324). Subsequently, as stated above, on June 9, 2011, Dr. Liss reported that Plaintiff was "doing well" and her panic attacks were "better," her mood was "stable," and her medication was "working well" and did not need to be changed. (Tr. 414). On November 8, 2011, and April 19, 2012, Dr. Liss reported that Plaintiff's medications were "working well" and did not need to be changed, although, on November 8, 2011, Plaintiff reported that her mood was "up & down," and, on April 19, 2012, she reported that her medications made her gain weight which made her more depressed. (Tr. 412-13). On December 11, 2012, when Plaintiff reported that she was "still depressed" and was continuing to have panic attacks, Dr. Liss increased the dosage of Plaintiff's medication. (Tr. 410). Also, the ALJ

noted that the record reflects that Plaintiff's blood pressure was "amenable to control with adherence to her treatment regimen." (Tr. 18, 287-89).

Ninth, the ALJ considered that Plaintiff was not always compliant. (Tr. 18). In this regard, Dr. Aydt reported, on September 6, 2012, that Plaintiff had not shown up for her blood pressure assessment. (Tr. 404). It was also noted, on September 10, 2012, that Plaintiff had not received a "flu UA," although she had been told to do so. (Tr. 404). See Eichelberger, 390 F.3d at 589 (holding that the ALJ properly considered that the plaintiff cancelled several physical therapy appointments and that no physician imposed any work-related restrictions on her) (citing Brown v. Chater, 87 F.3d 963, 965 (8th Cir. 1996) (claimant's failure to comply with prescribed medical treatment and lack of significant medical restrictions is inconsistent with complaints of disabling pain). See also Wildman v. Astrue, 596 F.3d 959, 968-69 (8th Cir. 2010) (it is permissible for ALJ to consider claimant's non-compliance with prescribed medical treatment).

In conclusion, the court finds that the ALJ's consideration of Plaintiff's credibility is based on substantial evidence and that it is consistent with the case law and Regulations.

**B.    Opinion of Dr. Santiago:**

The court has set forth above, in regard to Plaintiff's credibility, Dr. Santiago's findings. In particular, the court has noted that Dr. Santiago, who was

Plaintiff's surgeon, opined, approximately four months after her October 2010 disc surgery, that Plaintiff could return to work full time, with the exception that she avoid heavy lifting and repetitive bending and twisting. (Tr. 260). The ALJ stated that, when determining Plaintiff's RFC, he gave significant weight to Dr. Santiago's opinion that Plaintiff needed to avoid heavy lifting and repetitive twisting and bending, although the ALJ noted that he was giving greater weight to the more restrictive opinion of the State agency review physician, because the latter doctor's opinion was better supported by the record as a whole, including Plaintiff's partially credible subjective complaints. (Tr. 19). Plaintiff argues both that the ALJ gave too much weight to Dr. Santiago's opinion and that the ALJ did not give any weight to Dr. Santiago's opinion. For the following reasons, the court finds that the ALJ gave proper weight to Dr. Santiago's opinion, and that the ALJ's opinion, in this regard, is based on substantial evidence.

First, upon determining the weight to be given Dr. Santiago's opinion, the ALJ was fulfilling his obligation to consider all the medical opinions of record and resolve the conflicts among the opinions. Indeed, "it is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'" See Hudson v. Barnhart, 345 F.3d 661, 667 (8th Cir. 2003) (citing Bentley v. Shalala, 52 F.3d 784, 785 (8th Cir. 1995); Cantrell v. Apfel, 231 F.3d 1104, 1107 (8th Cir.

2000) (discussing an ALJ's role in resolving conflicts among medical opinions); 20 C.F.R. § 416.927(d) (2003) (outlining how medical opinions are to be weighed).

Second, the issue for this court is whether the record as a whole supports the ALJ's determination. See Hepp v. Astrue, 511 F.3d 798, 806 (8th Cir. 2008); Senne v. Apfel, 198 F.3d 1065, 1067 (8th Cir. 1999) ("We have consistently held that a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case.").

Third, when determining the weight to be given Dr. Santiago's opinion, the ALJ considered the objective medical evidence supporting Dr. Santiago's opinion. As discussed above in regard to Plaintiff's credibility, the ALJ considered that Dr. Santiago reported that, even before Plaintiff's October 2010 surgery, her strength was normal, her gait was stable, and she had normal ROM of flexion, extension, and neck rotation, and that, after surgery, Dr. Santiago reported that Plaintiff said she was doing well and that she had stable gait and normal strength in her lower extremities. The ALJ also considered that Dr. Santiago reported that post-surgical x-rays showed stable implants and alignment. The opinions of treating doctors are given controlling weight only where they are supported by medically acceptable techniques and where they are not inconsistent with other substantial evidence.

See Tilley v. Astrue, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2) (2000)).

Fourth, to the extent the ALJ did not credit Dr. Santiago's opinion in its entirety, a treating physician's opinion "does not automatically control or obviate the need to evaluate the record as a whole." Hogan v. Apfel, 239 F.3d 958, 961 (8th Cir. 2001). Moreover, an "ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions of any of the claimant's physician's." Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011).

Fifth, to the extent Plaintiff argues the ALJ did not give any weight to Dr. Santiago's opinion, the record reflects that the ALJ did, in fact, give some weight to Dr. Santiago's opinion, as he limited Plaintiff to only occasional bending and stooping. See Choate v. Barnhart, 457 F.3d 865, 869-70 (8th Cir. 2006) (holding that the limitations imposed by the ALJ as reflected in the claimant's RFC demonstrating that the ALJ gave some credit to the opinions of the treating physicians).

Sixth, as discussed above, the ALJ considered that Dr. Santiago reported that Plaintiff felt she felt better after surgery, that she was happy with the outcome, and that she was doing well. The ALJ also considered that Dr. Santiago's reports, in this regard, were consistent with Dr. Aydt's records. In conclusion, the court finds that the ALJ gave proper weight to Dr. Santiago's opinion upon determining the

severity of Plaintiff's impairments and her RFC, and that the ALJ's decision, in this regard, is based on substantial evidence.

## C.    The Opinion of Dr. Liss:

In a Mental RFC Questionnaire, Dr. Liss reported that Plaintiff was unable to meet competitive standards in regard to all abilities listed on the Questionnaire, including the ability to remember work-like procedures, understand and remember very short and simple instructions, carry out very short and simple instructions, maintain attention for a two-hour segment, maintain regular attendance and be punctual, sustain an ordinary routine without special instructions, make simple work-related decisions, ask simple questions, accept instructions, get along with co-workers, deal with normal work stress, and be aware of normal hazards and take appropriate precautions.   Dr. Liss also opined that Plaintiff could not interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, travel to unfamiliar places, or use public transportation.   Dr. Liss further opined that Plaintiff would be absent more than four times a month due to her impairments, and that these limitations existed since 1990.   Dr. Liss also found that Plaintiff had a Global Assessment of Functioning (GAF)[2] of 30.    (Tr. 343-45).    Plaintiff argues that the ALJ's

---

[2] Global assessment of functioning (GAF) is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations.   See Diagnostic and Statistical Manual of Mental

determination that little weight should be given to Dr. Liss's opinion is not based on substantial evidence. For the following reasons, the court finds that the ALJ gave proper weight to Dr. Liss's opinion.

First, a physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence. <u>Stormo v. Barnhart</u>, 377 F.3d 801, 805-06 (8th Cir. 2004); <u>Hogan</u>, 239 F.3d at 961. <u>See also Johnson v. Astrue</u>, 628 F.3d 991, 992 (8th Cir. 2011) (holding that checkmarks on a Medical Source Statement are "conclusory opinions" which can be discounted if contradicted by other objective medical evidence); <u>Wildman v. Astrue</u>, 596 F.3d 959, 964 (8th Cir. 2010) ("'The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value.' . . . Indeed, '[a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements.'") (quoting <u>Holmstrom v. Massanari</u>, 270 F.3d 715, 721 (8th Cir. 2001) and <u>Piepgras v. Chater</u>, 76 F.3d 233, 236 (8th Cir. 1996)).

---

Disorders, DSM-IV, 30-32 (4th ed. 1994). Expressed in terms of degree of severity of symptoms or functional impairment, GAF scores of 31 to 40 represent "some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood," 41 to 50 represents "serious," scores of 51 to 60 represent "moderate," scores of 61 to 70 represent "mild," and scores of 90 or higher represent absent or minimal symptoms of impairment. <u>Id.</u> at 32.

Second, the ALJ considered that the limitations imposed by Dr. Liss were primarily based on Plaintiff's subjective complaints. (Tr. 20). See Kirby v. Astrue, 500 F.3d 704, 709 (8th Cir. 2007) (finding ALJ properly gave less weight to opinion of doctors who base their opinion on a claimant's subjective complaints rather than on objective medical evidence).

Third, as discussed above in regard to Plaintiff's credibility, and as considered by the ALJ, Dr. Liss's treatment notes are inconsistent with the limitations he imposed in the Questionnaire. "It is permissible for an ALJ to discount an opinion of a treating physician that is inconsistent with the physician's clinical treatment notes." Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009). See also Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006) (holding that an ALJ may give a treating doctor's opinion limited weight if it is inconsistent with the record). An ALJ may "discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Prosch v. Apfel, 201 F.3d 1010, 1013 (8th Cir. 2000). See also Travis v. Astrue, 477 F.3d 1037, 1041 (8th Cir. 2007) ("If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.").

Fourth, as stated above in regard to Plaintiff's credibility, Plaintiff was never hospitalized for psychiatric treatment; she did not receive any psychotherapy; and she was stabilized when she was compliant with her medications. Also, the limitations imposed by Dr. Liss were inconsistent with Plaintiff's daily activities as discussed above.

Fifth, Dr. Liss's conclusions were inconsistent with other treatment notes, as discussed above, which reflect that Plaintiff was oriented and had appropriate mood and affect. See Prosch, 201 F.3d at 1013; Travis, 477 F.3d at 1041.

Sixth, Plaintiff contends that the ALJ erred upon stating that, although Dr. Liss stated on the Questionnaire that Plaintiff had a GAF of 30 and 40, there were no documented GAF scores in any of Dr. Liss's treatment notes. (Tr. 20). Plaintiff, moreover, does not reference any GAF scores in Plaintiff's treatment notes. (Doc. 15 at 12). In any case, an ALJ may afford greater weight to medical evidence than to a GAF score. See Jones v. Astrue, 619 F.3d 963, 974 (8th Cir. 2010) (ALJ may afford greater weight to medical evidence and testimony than to GAF scores); Grim v. Colvin, 2014 WL 859840, at *7-8 (E.D. Mo. Mar. 5, 2014) (ALJ properly found claimant's mental impairments were not serious despite the presence of GAF scores that reflected moderate or serious symptoms).

Seventh, upon declining to give Dr. Liss's opinion controlling weight, the ALJ complied with the Regulations which require an ALJ to give "good reasons"

for discounting the opinion of a treating source's medical opinion. Social Security Ruling (SSR) 96-29, 1996 WL 374188, *5 (July 2, 1996) (clarifying that 20 C.F.R. §§ 404.1527 and 416.927 require an ALJ to provide "good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion(s)."). See also Martise v. Astrue, 641 F3d 909 (8th Cir. 2010). In conclusion, the court finds that the ALJ gave proper weight to Dr. Liss's opinion when determining the severity of Plaintiff's impairments and her RFC.

## D.     Opinion of Ms. Arnzen:

Ms. Arnzen, who is a nurse practitioner and Plaintiff's friend and co-worker (Tr. 64), opined in a Physical RFC Questionnaire, dated October 29, 2013, that Plaintiff could sit only for 30 minutes at a time; she could stand for only 15 minutes at a time; after standing for 15 minutes, Plaintiff would have to lie down; in an 8-hour work day, Plaintiff could sit, stand, and walk less than 2 hours; Plaintiff frequently fell; she could never lift less than 10 pounds; Plaintiff could never twist, crouch/squat, or climb ladders; she could rarely stoop or climb stairs; she could never use her arms to reach overhead; and Plaintiff would be absent from work more than 4 days a month. (Tr. 399-403). Ms. Arnzen also reported that Plaintiff was capable of handling mental stress associated with work activity and that she could handle moderate stress. (Tr. 400). The ALJ stated that he gave little weight to Ms. Arnzen's opinion. (Tr. 19). Plaintiff contends that the ALJ erred in

doing so and that the ALJ's decision, in this regard, is not based on substantial evidence. (Doc. 15 at 11). The court finds Plaintiff's argument without merit for the following reasons.

First, as stated by the ALJ, Ms. Arnzen is a family nurse practitioner, and, as such, she is not an acceptable medical source. See SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006) ("[O]nly 'acceptable medical sources' can give us medical opinions."); 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding therapists and nurse practitioners from the list of acceptable medical sources).

Second, as stated by the ALJ, Ms. Arnzen's conclusions are inconsistent with Plaintiff's treatment records which frequently note that Plaintiff was oriented and had appropriate mood and affect. Ms. Arnzen's opinion was also inconsistent with Dr. Liss's treatment notes reflecting that Plaintiff was doing well. See Hacker v. Barnhart, 459 F.3d 934, 937 (8th Cir. 2006) (holding that where a treating physician's notes are inconsistent with his or her RFC assessment, controlling weight is not given to the RFC assessment); Reed v. Barnhart, 399 F.3d 917, 920 (8th Cir. 2005) (holding that a treating physician's opinion is given controlling weight "if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence").

Third, Ms. Arnzen's checkmarks on the Mental RFC Questionnaire are not controlling. See Stormo, 377 F.3d at 805-06; Hogan, 239 F.3d at 961. In

conclusion, the court finds that the ALJ gave proper weight to Ms. Arnzen's opinion and that the ALJ's decision, in this regard, is based on substantial evidence.

**D.    Opinion of State Agency Psychologist Stanley Hutson, Ph.D.:**

Dr. Hutson, a State agency consulting psychologist, stated, on a Psychiatric Review Technique Form, dated May 11, 2011, that Plaintiff had mild restrictions in activities of daily living, maintaining social functioning, and difficulties in maintaining concentration, persistence or pace; and she had no limitations in regard to repeated episodes of decompensation. Dr. Hutson further reported that his observation, based on a telephone interview with Plaintiff, was that she was cooperative and answered questions well; he noted no difficulties. Dr. Hutson concluded that Plaintiff's "mental disorders cause[d] mild limitations," and that her mental impairments were not severe. (Tr. 330-40).

The ALJ stated that he gave "only some weight" to Dr. Hutson's opinion because, at the time Dr. Hutson made his determination, he did not have all of Plaintiff's records. The ALJ further stated that, upon reviewing all of Plaintiff's records, he found that Plaintiff did have the severe medically determinable

impairments of depression and anxiety, but that the evidence of record did not support a finding that these conditions were disabling. (Tr. 19-20).[3]

As a State agency consultant Dr. Hutson is highly trained qualified expert in Social Security disability evaluations. <u>See</u> 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence). The ALJ, therefore, correctly considered Dr. Hutson's opinion.

Further, as with other medical sources, the Regulations required the ALJ to give good reasons for the weight given to Dr. Hutson's opinion. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). The ALJ complied with this requirement, as discussed above. Also, as discussed above, the ALJ considered that, at the time Dr. Hutson rendered his opinion, he did not have the benefit of reviewing all of Plaintiff's medical records. The ALJ found, however, that the record did not reflect that Plaintiff's conditions were not more restrictive than those detailed by Dr. Hutson. (Tr. 19). <u>See Hogan v. Apfel</u>, 239 F.3d 958, 961 (8th Cir. 2001) ("Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole."). The

---

[3] It is not clear from Plaintiff's brief whether she takes issue with the weight given to Dr. Hutson's opinion or the opinion of Dr. Simowitz, as discussed below. (Doc. 15 at 9-10). Nonetheless, the court will address the opinions of both doctors.

court finds, therefore, that the ALJ gave proper weight to Dr. Hutson's opinion and that the ALJ's decision, in this regard, is based on substantial evidence.

**E.      Opinion of Frederic Simowitz:**

Dr. Frederic Simowitz completed a Physical RFC Assessment, dated May 13, 2011, after reviewing Plaintiff's medical records as well as her function report. Dr. Simowitz opined in the Physical RFC Assessment that Plaintiff could occasionally lift 20 pounds, frequently lift 10 pounds, and stand and/or walk and sit about 6 hours in an 8-hour workday; that her ability to push and/or pull was limited in the lower extremities; that she could frequently balance, occasionally climb, crouch, kneel, and stoop, and never climb ladders, ropes, or scaffolds; that she had no manipulative, visual, or communicative limitations; and that she should avoid even moderate exposure to extreme cold and all exposure to hazards, heights, and vibration. (Tr. 72-78).

The ALJ stated that he gave great weight, although not controlling weight, to Dr. Simowitz's opinion that Plaintiff could perform a range of work at the light exertional level. For the following reasons the court finds that the ALJ gave proper weight to Dr. Simowitz's opinion; and that the ALJ's decision, in this regard, is based on substantial evidence.

First, upon determining the weight given to Dr. Simowitz's opinion, the ALJ noted that Dr. Simowitz's opinion was well supported by the objective medical

evidence. (Tr. 19). <u>Cf.</u> <u>Tilley v. Astrue</u>, 580 F.3d 675, 679 (8th Cir. 2009) ("A treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'"). <u>See also</u> 20 C.F.R. § 404.1527(d)(3) (providing that more weight will be given to an opinion when a medical source presents relevant evidence, such as medical signs, in support of his or her opinion).

Second, the court notes that Dr. Simowitz provided a lengthy narrative of records supporting his opinion. Notably, in his RFC Assessment, Dr. Simowitz considered that Dr. Santiago reported, post-surgery, that Plaintiff was doing well and that she was happy with her progress. (Tr. 73-74).

Third, Dr. Simowitz considered Plaintiff's self-reporting, in a Function Report, that she prepared meals, did moderate house work, drove, and went out alone.

Fourth, as discussed above in regard to Dr. Hutson, as a State agency consultant Dr. Simowitz is highly trained qualified expert in Social Security disability evaluations. <u>See</u> 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

Fifth, the ALJ noted that as a non-examining source, Dr. Simowitz's opinion should be afforded less weight than examining sources, but that upon determining

the weight to be given Dr. Simowitz's opinion, the record should be considered as a whole. (Tr. 18-19). See Hogan, 239 F.3d at 961.

Sixth, as required by the Regulations, the ALJ gave good reasons for the weight given to Dr. Simowitz's opinion. 20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(ii). In conclusion, the court finds that the ALJ gave proper weight to all opinions of record, including Dr. Simowitz's opinion, and that the ALJ's decision, in this regard, is based on substantial evidence.

## E.     Plaintiff's RFC:

The Regulations define RFC as "what [the claimant] can do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." Lauer v. Apfel, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Tucker v. Barnhart, 363 F.3d 781, 783 (8th Cir. 2004) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)). See also Myers v. Colvin, 721 F.3d 521, 526 (8th Cir. 2013).

To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind

of work the claimant can still do despite his or her impairments.  Although assessing a claimant's RFC is primarily the responsibility of the ALJ, a "'claimant's residual functional capacity is a medical question.'"  Lauer, 245 F.3d at 704 (quoting Singh v. Apfel, 222 F.3d 448, 451 (8th Cir. 2000)).  The Eighth Circuit clarified, in Lauer, 245 F.3d at 704, that "'[s]ome medical evidence,' Dykes v. Apfel, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's 'ability to function in the workplace,' Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000)."  Thus, an ALJ is "required to consider at least some supporting evidence from a professional."  Id.  See also Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC.").

As required by the Regulations and case law, the ALJ in the matter under consideration identified Plaintiff's functional limitations and restrictions, and then assessed her work-related abilities on a function-by-function basis.  See Harris v. Barnhart, 356 F.3d 926, 929 (8th Cir. 2004).  To the extent Plaintiff argues the ALJ should have included limitations beyond those which he found credible, an RFC need only include a plaintiff's credible limitations.  See Tindell v. Barnhart, 444

F.3d 1002, 1007 (8th Cir. 2006) ("The ALJ included all of Tindell's credible limitations in his RFC assessment, and the ALJ's conclusions are supported by substantial evidence in the record.").  Only after reviewing the record as a whole, including factors related to Plaintiff's credibility and the medical opinions of record, as discussed above, did the ALJ conclude that Plaintiff had the RFC to perform light work, except for the following limitations:  Plaintiff could not climb ladders, ropes, or scaffolds; she could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; she should avoid moderate exposure to extreme cold; she should avoid all exposure to excessive vibrations, to unprotected heights, and to the use of hazardous machinery, excluding motor vehicles; and she was limited to performing simple unskilled work with only occasional interaction with co-workers and the general public.  The court finds that the ALJ's RFC determination is based on substantial evidence and consistent with the Regulations and case law.

Further, after obtaining the testimony of a VE (Tr. 66-70), the ALJ concluded that there was work in the national economy which, given Plaintiff's RFC, age, education, and work experience, Plaintiff could perform, and that she was, therefore, not disabled.  See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011) ("Based on our previous conclusion . . . that 'the ALJ's findings of [the claimant's] RFC are supported by substantial evidence,' we hold that '[t]he

hypothetical question was therefore proper, and the VE's answer constituted substantial evidence supporting the Commissioner's denial of benefits.'") (quoting Lacroix v. Barnhart, 465 F.3d 881, 889 (8th Cir. 2006)); Robson v. Astrue, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a VE's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations).  The court finally finds the ALJ's ultimate determination that Plaintiff was not disabled is based on substantial evidence.

## IV.
## CONCLUSION

For the reasons set forth above, the court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the relief sought by Plaintiff in her Complaint and Brief in Support of Complaint (Docs. 1, 15) is **DENIED**;

**IT IS ORDERED** that a separate judgment be entered incorporating this Memorandum and Order.

Dated this 13th day of May 2015.

/s/ Noelle C. Collins
UNITED STATES MAGISTRATE JUDGE